**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GLOBAL TOTAL OFFICE LIMITED PARTNERSHIP, an Ontario, Canada limited partnership and GLOBAL INDUSTRIES, INC., a Maryland Corporation, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 10 C 1896 |
| GLOBAL ALLIES, LLC, a California limited liability company, | ) ) ) | Judge Sharon Johnson Coleman |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs move for judgment as a matter of law for liability on Counts I, II, IV, VI, and VIII of the Second Amended Complaint for trademark infringement, deceptive trade practices and unfair competition under both federal (Lanham Act) and Illinois statutory and common law. The Court heard oral arguments on the motion on January 30, 2012. The issue presented for resolution by partial summary judgment requires the Court to determine the likelihood of consumer confusion between the two marks. After reviewing the briefs and submissions of the parties and hearing oral argument, this Court denies plaintiffs' motion.

**Background**

The following facts are derived the Rule 56.1 statements of fact submitted by the parties. Except where noted, the following facts are undisputed. Plaintiffs Global Total Office Limited Partnership and Global Industries, Inc. are part of a group of affiliated companies originating in Canada. Global Upholstery was formed in 1966 as the general partner of Global Total Office. Global Industries was formed in 1972 in New Jersey and is the exclusive marketing, distribution and sales agent for Global Upholstery. Defendant Global Allies, LLC, was formed in 2001 in

California. Both plaintiffs and defendant are in the business of marketing, distributing and selling seating, though plaintiffs refer to their product as "institutional and commercial furniture" and defendant describes its task and stackable seating without reference to it as "institutional." The parties disagree on the channels and manner in which each company conducts its business. Plaintiffs assert that it is involved in both office and hospitality industries, selling its task and stacking chairs through various channels including showrooms, tradeshows, representatives, and catalogs. Defendant contends that plaintiffs have only recently moved into the hospitality industry, but defendant operates almost exclusively within that hospitality arena. Defendant contends that plaintiffs primarily sell "office furniture" as opposed to specifically targeting hotels.

It is undisputed that plaintiffs are the owner of a United States registered trademark: GLOBAL & Design, which was filed on September 8, 1988, and issued on December 5, 2000. Plaintiffs claim to be widely known as "Global" and the "Global Group" throughout the United States and elsewhere in the commercial furniture industry. Plaintiffs claim to have been continuously using the trademark and trade name GLOBAL in the United States and elsewhere since 1966 when it started out manufacturing office furniture in Canada. Defendant markets and sells its products under the name and mark "Global Allies."

Plaintiffs filed the instant motion for partial summary judgment claiming that it is undisputed that they own a protectable mark ( i.e., GLOBAL) and the evidence of a likelihood of consumer confusion is so one-sided that the answer is not in doubt and plaintiff is entitled to judgment as a matter of law. This Court disagrees.

**Legal Standard**

A party is entitled to summary judgment if all of the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

**Discussion**

A necessary element of plaintiffs' deceptive trade practices, infringement and unfair competition claims under both state and federal law is that there is a likelihood of consumer confusion between Global Total Office Ltd.'s mark and Global Allies' mark. *See Autozone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). There are seven factors that courts weigh to determine the likelihood of confusion: (1) the similarity of the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 642 (7th Cir. 2001). Although no single factor is dispositive and the court may apply varying weight to each of the factors depending on the case, usually the similarity of the marks, the defendant's intent and evidence of actual confusion weigh most heavily. *Id.*

The likelihood of consumer confusion is ultimately a question of fact, *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1167 (7th Cir. 1986), that may be resolved on summary judgment only "if the evidence is so one-sided that there can be no doubt about how the

3

question should be answered." *Packman*, 267 F.3d at 637 (quoting *Door Sys. Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996), *see also AHP Subsidiary Holding Co. v. Stuart Hale Co.,* 1 F.3d 611, 616 (7th Cir. 1993)("[A] motion for summary judgment in trademark infringement cases must be approached with great caution.").

First, this Court rejects plaintiffs' argument that defendant has admitted there is a likelihood of confusion, by answering the original complaint with a counterclaim for infringement alleging a likelihood of confusion between the parties' marks. The active complaint in this case is the Second Amended Complaint and defendant has filed an Answer and Counterclaim to the Second Amended Complaint that does not include a counterclaim for infringement. Next, the Court turns to the likelihood of confusion factors, beginning with the similarity and strength of the marks, actual confusion, and defendant's intent, followed by the remaining factors.

1. *Similarity of the Marks*

To determine whether the marks are similar, courts must view the marks as a whole "in light of what happens in the marketplace and not merely by looking at the two marks side-by-side." *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 898 (7th Cir. 2001). "[T]he test is not whether the public would confuse the marks, but whether the viewer of an accused mark would be likely to associate the products or service with which it is connected with the source of products or services with which an earlier mark is connected." *Autozone, Inc.*, 543 F.3d at 930 (quoting *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976).

Plaintiffs argue that both parties are known as "Global" and asserting that both parties emphasize the world Global in their marks. Plaintiffs contend that the overall impression of the marks and names are the same. Defendant disagrees and emphasizes that its mark is Global Allies LLC, not simply Global. Looking at the plaintiffs' whole mark, as this Court must do, it has a

4

circle with horizontal lines running through it under which is written in plain sans serif font in all capital letters the word GLOBAL. Defendant on the other hand uses a serif font for its mark with a stylized globe as the "O" in Global and "Allies LLC" written underneath. While it is conceivable that consumers in the marketplace could think the two entities are related, in each mark there is nothing to associate the name with a product or service and the marks themselves visually are quite different. Therefore, this factor weighs against a likelihood of confusion.

2. *The Strength of the Plaintiff's Mark*

"The stronger the mark, the more likely it is that encroachment on it will produce confusion." *Autozone, Inc.,* 543 F.3d at 933 (quoting *2 McCarthy §11.73,* at 11-169 to 170 (2008)). "The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 684 (7th Cir. 2001). Trademark law recognizes five categories of trademarks, in ascending order of distinctiveness: generic, descriptive, suggestive, arbitrary and fanciful. *CAE, Inc.*, 267 F.3d at 684 (citing *Two Pesos Inc. v. Taco Cabana Inc.*, 505 U.S. 763, 768 (1992)). "The commercial impression of a trademark is derived from the mark as a whole, not from its elements separated and considered in detail." *Estate of P. D. Beckwith, Inc. v. Commissioner of Patents*, 252 U.S. 538, 545-46 (1920).

Plaintiffs argue in a very conclusory fashion that their mark is very strong and it has been recognized as a worldwide leader in the commercial furniture industry. Much of plaintiffs' argument focuses on the amount of sales it has made, the number of catalogs it has sent out, and the number of dealers and showrooms it has, rather than an actual analysis of the strength of its mark to identify its products. Generally, a mark is distinctive if it is inherently distinctive or it has acquired a secondary meaning. *Two Pesos*, 505 U.S. at 769. Here, "Global" is not inherently distinctive and there is substantial question as to whether it has acquired a secondary meaning. At

5

best, it is suggestive of the reach of the company. Indeed, as defendant argues the word "Global" is widely used in commerce in a variety of industries. Although defendant does not present any particular third-party trademark registrations that include the world "Global," it is the kind of generic word that can be applied in a multitude of ways by virtually any company in any industry that wants to appear to have broad commercial capabilities. The word "Global" by itself does not identify the products as coming from any particular source. Thus, there are factual questions as to the strength of the mark.

3. *Actual Confusion*

Although evidence of actual confusion, if available, is entitled to substantial weight in the likelihood of confusion analysis, this evidence is not required to prove that a likelihood of confusion exists. *CAE, Inc.*, at 685. However, testimony of actual confusion is not entitled to great weight absent the identity of the speaker and the time-frame in which it was said. *Id.* at 686.

Plaintiffs argue that there is pervasive evidence of actual confusion. Defendant responds that much of plaintiffs' evidence is not specific as to the identity of the speaker and the time-frame that the confusion occurred. Plaintiffs at times cite to as many as or more than 100 pages of deposition testimony to show incidents of actual confusion (See SOF at ¶80). Defendant has also come forward with declarations from hotel design professionals (S. Higgins of Canoe Hospitality, M. Shapiro of Starwood Hotels, L. Traxler of Hilton (formerly of Hyatt), D. Parker of the Parker Company, C. Schirmer of Hospitality Purchasing Group Int'l., and B. Langmade of the Purchasing Management Int'l.) attesting to a lack of confusion between the two companies. Indeed, much of the supporting material presented by each party depends heavily on the credibility of the witnesses, which is something that this Court cannot determine on summary judgment.

4. *The Defendant's Intent to "Palm-Off"*

"In some circumstances, an intent to confuse may be reasonably inferred from the similarity of the marks where the senior mark has attained great notoriety." *Autozone, Inc.*, 543 F.3d at 934 (citing *Sands, Taylor & Wood Co. v. Quaker Oats, Co.,* 978 F.2d 947, 963 (7th Cir. 1992)). Plaintiffs argue that defendant has utter disregard for plaintiffs' trademark rights because it failed to conduct a clearance search when it adopted the "Global Allies" mark. However, plaintiffs put forth no actual evidence that defendant intended to pass off its products as that of the plaintiffs. Furthermore, the evidence does not support a conclusion that plaintiffs' mark has attained such great notoriety that intent to confuse can be inferred.

   5. *The Degree of Care Exercised by Consumers*

"The more widely accessible and inexpensive the products and services, the more likely [it is] that consumers will exercise a lesser degree of care and discrimination in their purchases." *CAE, Inc.*, 267 F.3d at 683. Here, the parties agree that their customers are predominantly sophisticated consumers and professional buyers. Plaintiffs argue that the consumers' sophistication does not diminish the likelihood of confusion because of the substantial identity between the parties' names and products. Plaintiffs assert that several personnel at design-firms and hotel in-house purchasing groups have been confused. Defendant, as stated above, has presented declarations from several (6) purchasers – either independent or in-house purchasers – for various hotel chains, including those chains which plaintiff claims to have sold furniture. Those declarations attest to the methods of procurement, such as having standard brands that have passed through company screening to meet certain criteria. At least, the declarations presented by defendant create a genuine issue of fact as to the degree of care exercised by consumers.

   6. *Similarity of the Products and The Area and Manner of Concurrent Use*

7

These factors overlap significantly in the parties' arguments. In comparing the two products, the court's inquiry is "not whether they are interchangeable, but whether 'the parties' products are the kind the public might very well attribute to a single source (the plaintiff).'"*Autozone, Inc.*, 543 F.3d at 931 (quoting *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 463 (7th Cir. 2000)). The next factor in the likelihood of confusion analysis assesses "'whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc.* 267 F3d. at 681 (quoting *Forum Corp. of N. Am. v. Forum Ltd.*, 903 F.2d 434, 442 (7th Cir. 1990)). Although it is not in dispute that both parties sell chairs there are considerable issues as to whether they could be attributed to a single source. There are also substantial factual questions as to whether the parties in fact sell to the same clients and through the same channels by similar means.

**Conclusion**:

Based on the foregoing, this Court finds abundant questions of fact that preclude summary judgment on the likelihood of consumer confusion. Accordingly, plaintiffs have failed to carry their burden to show that the evidence is so one sided that there can be no doubt about how the question should be answered. Plaintiffs' motion for partial summary judgment [97] is denied.

IT IS SO ORDERED.

Date: February 14, 2012

Entered:_____
Sharon Johnson Coleman

8